[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
September 13, 2005
**THOMAS K. KAHN**
**CLERK**

_____

No. 05-10718
Non-Argument Calendar

_____

D. C. Docket No. 04-00098-CR-ORL-22-DAB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAWN HANEY SLOAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 13, 2005)**

Before BIRCH, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Dawn Haney Sloan appeals the 16-month prison sentence that the district

court imposed for her violations of concealing property in a bankruptcy proceeding, fraudulently making a false oath or account regarding a bankruptcy proceeding, embezzling the property of a bankruptcy debtor, and bankruptcy fraud. Sloan argues on appeal that the district court clearly erred when it denied her a downward adjustment of her sentence based on her acceptance of responsibility for her crimes. We affirm.

Sloan was a member of the skeleton crew that was responsible for concluding the operations of her employer, American Network Exchange, Inc. (ANE), which had entered bankruptcy. Sloan had many responsibilities on the financial side of ANE, one of which was controlling the petty cash fund of the company. After an investigation by other employees of ANE, several irregularities and discrepancies were discovered in the petty cash account.

The internal review of that account determined that Sloan had stolen approximately $35,000 from ANE. Sloan was confronted with these facts and agreed to pay ANE full restitution. She repaid approximately $2000 through concession of her final paycheck and another payment. During an investigation of her theft, Sloan told the FBI that her last check was improperly held from her, and she was entitled to that compensation.

To explain her theft, at trial Sloan testified that an ANE executive told her

2

that she would be reimbursed fully for her expenses and that her pay would be doubled for work performed during the winding down of the business if she agreed to stay on until the business was closed out, but Sloan's story fell apart. The prosecution showed that the total of fraudulently voided checks, checks made out to "cash," and counter checks that Sloan wrote on the account of ANE was far greater than Sloan's alleged reimbursement expenses and double salary during the wind-down of the business. Although Sloan testified that she declared the supposedly "earned" compensation on her tax return, the record showed that she did not claim that income. Sloan also frustrated efforts to collect restitution by changing her telephone number.

"Because the sentencing judge is uniquely positioned to evaluate the defendant's acceptance of responsibility, we defer to the court's determination and review for clear error." See United States v. Anderson, 23 F.3d 368, 369 (11th Cir. 1994). To earn the downward adjustment in her sentence, Sloan must have "clearly demonstrat[ed] acceptance of responsibility" for the crime she committed. U.S.S.G. § 3E1.1(a). One of the factors regarding Sloan's acceptance of responsibility is her degree of truthfulness with authorities during the investigation and prosecution of her crime. Id. § 3E1.1, comment. (n.1). It is clear from the record that Sloan was deceptive during her interviews with government agents, her

3

testimony at trial contradicted the record, and she misrepresented the income she declared on the relevant tax return. The district court did not clearly err when it determined Sloan did not accept responsibility for her crimes.

**AFFIRMED.**